**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KOMAA MNYOFU,                                      ) | |
|         )| |
|     Plaintiff,                                   ) | |
|         )| |
|     v.                                           ) | No. 03 C 8717 |
|         )| |
| BOARD OF EDUCATION OF RICH                         ) | |
| TOWNSHIP HIGH SCHOOL DISTRICT 227,                 ) | |
| a unit of local government, Cook                   ) | |
| County, Illinois, and SELMA                        ) | |
| McDONALD, individually and in her                  ) | |
| official capacity,                                 ) | |
|         )| |
|     Defendants.                                  ) | |

## MEMORANDUM OPINION

Before the court is the motion of defendant Board of Education of Rich Township High School District 227 (the "Board") for summary judgment on the only claim that survived defendants' previous summary judgment motion--plaintiff's First Amendment claim against the Board and defendant Selma McDonald arising out of the April 7, 2005 school assembly. The motion concerns whether there is a basis for imposing Monell liability on the Board for the removal of plaintiff from the assembly. Also before the court are the Board's motions to strike portions of plaintiff's Local Rule 56.1 statement and to deem certain facts admitted.

## BACKGROUND

In our memorandum opinion of April 27, 2007, we observed in pertinent part:

A jury will have to decide whether McDonald intended to suppress plaintiff's speech based on its content or whether she genuinely believed that the disruption he caused justified his removal.

Additionally, before making that determination, a jury will have to decide whether McDonald bears responsibility for having plaintiff removed from the assembly. If, for example, [Celeste] Nelson called security without any direction from McDonald, that fact would seriously undermine plaintiff's claim. If Nelson told security to remove plaintiff from the assembly and she made that decision on her own, there would no basis to hold McDonald liable. (And plaintiff did not sue Nelson, so she faces no liability.)

As for the Board, whether there is a basis for holding it liable under <u>Monell</u> for removing the plaintiff from the assembly remains to be seen. Neither side addressed this issue in briefing the motion for summary judgment, so we shall not decide it. We note, however, that to recover against the Board under § 1983, plaintiff must establish either that "(1) the Board has an express policy that, when enforced, causes a constitutional deprivation; (2) the Board has a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled that it constitutes custom or usage with[] the force of law; or (3) a person with final policymaking authority caused the constitutional injury." <u>Brandt v. Bd. of Educ. of the City of Chicago</u>, 420 F. Supp. 2d 921, 936 (N.D. Ill. 2006) (citing <u>Calhoun v. Ramsey</u>, 408 F.3d 375, 379 (7th Cir. 2005); <u>see</u> <u>Monell v. Dept. of Soc. Serv. of the City of New York</u>, 436 U.S. 658, 691-693, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). As relevant here, the only issue appears to be whether plaintiff can prove that a person with final policymaking authority caused a constitutional injury.

Notably, even if a jury finds McDonald liable for a First Amendment violation, it does not necessarily follow that there is a basis for imposing <u>Monell</u> liability against the Board. "<u>Monell</u>'s 'policymaker' prong is not a simple determination of whether a person with policy making authority caused a constitutional deprivation." <u>McGreal v. Ostrov</u>, No. 98 C 3958, 2002 WL 1784461, at *3 (N.D. Ill. Aug. 1, 2002). "The 'policymaker' prong of <u>Monell</u> requires more than the act of a policymaker. It is necessary for the policymaker's act to have been in conformance with, or in the creation of, governmental rules that have the effect of law (and

>then the rule must violate the plaintiff's constitutional rights)." Id. (citing Auriemma v. Rice, 957 F.2d 397, 400 (7th Cir. 1992) and Gernetzke v. Kenosha Sch. Dist. No. 1, 274 F.3d 464, 469-470 (7th Cir. 2001)). Moreover, "a policymaker's decision will rarely have the force of policy unless the decision will govern similar issues in the future." Id.; see Auriemma, 957 F.2d at 400 ("Unless today's decision ought to govern tomorrow's case under a law or custom with the force of law, it cannot be said to carry out the municipality's policy."). The parties should bear the standards for Monell liability in mind as this case proceeds.

Mnyofu v. Board of Educ., No. 03 C 8717, 2007 WL 1308523, at *9-10 (N.D. Ill. Apr. 27, 2007) (footnotes omitted). We also noted that "[a]lternatively, in the event a jury finds that only Nelson, not McDonald, was responsible for removing plaintiff from the assembly and that his removal violated his constitutional rights, plaintiff could attempt to hold the Board liable for Nelson's conduct if he can satisfy Monell's policymaking prong." Id. at *10 n.17.

The basis for the Board's motion is simple: neither McDonald nor Nelson had final policymaking authority, and therefore plaintiff cannot prove a Monell claim under the policymaking prong. And in the Board's view, the court "foreclosed" the possibility of plaintiff prevailing under the other prongs of Monell. (Board's Mem. in Supp. of Mot. for Summ. J. at 4.)

Plaintiff's response is threefold. First, he denies that McDonald and Nelson were not policymakers. Second, he contends that there is sufficient evidence from which a jury could conclude that the Board adopted McDonald's action as its own, or "ratified" it, and therefore became the author of the action for § 1983

purposes. Third, he contends that there are triable issues with respect to the "express policy" and "custom" prongs of Monell. We will address each argument in turn.

**A.  Policymakers**

Selma McDonald and Celeste Nelson were, respectively, the principal and assistant principal of Rich Central High School in April 2005, when plaintiff was removed from a school assembly. Their status as final policymakers under § 1983 is a question of state law. See Killinger v. Johnson, 389 F.3d 765, 771 (7th Cir. 2004). The Illinois School Code provides that the Board "has full power to manage the schools and to adopt all rules and regulations needed for that broad purpose." Duda v. Board of Educ., 133 F.3d 1054, 1061 (7th Cir. 1998) (citing 105 ILCS 5/10-20.5). Principals assume administrative responsibilities under the supervision of the superintendent and in accordance with the Board's reasonable rules and regulations. 105 ILCS 5/10-21.4a. Nothing in the School Code leads to the conclusion that a principal or assistant principal is a final policymaker with respect to regulating conduct in the schools. See Brandt, 420 F. Supp. 2d at 937.

Plaintiff asserts that the Board relied on a contradictory argument in its previous motion for summary judgment when it stated that "the determinations made by the . . . Building Principal and Assistant Principal were policy decisions." (Defs.' Mem. in Supp. of Mot. for Summ. J. of Oct. 18, 2006 at 12.) But plaintiff

neglects to supply the context of this statement. Defendants contended that the decisions were "policy decisions" for which the defendants were entitled to immunity under the Illinois Tort Immunity Act (the "Act").[1] The Illinois Supreme Court has defined a "policy decision" as one that requires a governmental employee to balance competing interests and to make a judgment call as to what solution will best serve those interests. See Harinek v. 161 N. Clark St. Ltd. P'ship, 692 N.E.2d 1177, 1181 (Ill. 1998). Whether an individual had final policymaking authority for Monell purposes is a different, and much narrower, inquiry from whether he or she made a "policy decision" under the Tort Immunity Act. Crudup v. Barton, No. 98 C 1498, 2002 WL 276285, at *6 (N.D. Ill. Feb. 27, 2002).[2]

Plaintiff has failed to raise a genuine issue as to whether McDonald and Nelson were final policymakers under § 1983.

---

[1] Immunity under the Act does not attach unless a plaintiff's injury results from an act performed or omitted by a governmental employee that is both a policy determination and an exercise of discretion. See Harinek v. 161 N. Clark St. Ltd. P'ship, 692 N.E.2d 1177, 1181 (Ill. 1998).
　　In our previous summary judgment ruling, it was unnecessary for us to reach the immunity issue because we found that much of plaintiff's tort claim for intentional infliction of emotional distress was time-barred and that in any event the complained-of conduct was not sufficiently outrageous. Mnyofu, 2007 WL 1308523, at *14 & n.32.

[2] The Board has filed a motion to deem admitted statements 4 and 5 of its Local Rule 56.1 statement of undisputed facts. Statement 4 is "Only the Board of Education is permitted to make policies which govern the District." Statement 5 is "The employees of the Board of Education are required to carry out and implement the policies of the Board of Education." (Def.'s R. 56.1 Statement ¶¶ 4-5.) Plaintiff denies these statements, relying solely on his argument that the Board previously made a "contradictory" statement. The Board is correct that this is an improper denial of these statements. We decline, however, to deem the "facts" admitted because, as stated supra, the issue is one of state law, and the "facts" simply reflect that law.

**B.    Ratification**

Plaintiff contends that evidence "abounds" from which a jury could conclude that the Board ratified the decision to remove plaintiff from the assembly. (Pl.'s Mem. in Opp'n at 5.) Plaintiff then describes several "facts," some of which are distortions or inaccurate descriptions of the evidence, regarding his interactions with the Board and the high school. Most of these "facts" relate to the decision to ban plaintiff from school property, a separate decision that was made by the district's superintendent after the assembly incident. In our previous opinion, we held that restricting plaintiff's access to the school was not a First Amendment violation and also found that there was no evidence to suggest that the ban was issued because of any viewpoint plaintiff expressed at the assembly. The facts relating to the ban are not relevant to the decision to remove plaintiff from the assembly.[3] Our focus is strictly on whether the Board ratified that decision, and there is no evidence that it did so. We reject plaintiff's argument that the Board adopted the removal

---

[3] In an attempt to intertwine the April 7 incident and the ban, plaintiff asserts that the president of the school board, Betty Owens, "promised to ban Mr. Mnyofu from all District property because he had criticized the Teachers' Union contract during the assembly." (Pl.'s Mem. in Opp'n at 5.) Plaintiff cites Exhibit 35, the Affidvit of Sunni Ali, in support of this contention. Ali's affidavit, however, says nothing of the sort. It simply states that Owens "assured the teachers that Mr. Mnyofu would be banned from the school" and does not link that assurance to the assembly in any way. (Pl.'s Ex. 35, ¶ 7.) Therefore, plaintiff's argument that "McDonald's actions at the April 7 assembly were first approved by an individual policymaker, Betty Owens," Pl.'s Mem. in Opp'n at 7, is wholly unfounded.

of plaintiff from the assembly by failing to investigate the incident and failing to discipline McDonald. Failing to investigate an incident or take punitive action against the alleged wrongdoer does not establish ratification. Baskin v. City of Des Plaines, 138 F.3d 701, 705 (7th Cir. 1998); Gernetzke, 274 F.3d at 469 ("The argument if accepted would convert every public employee's action that a plaintiff wished to challenge into the action of the employer.").

Plaintiff has failed to raise a genuine issue as to whether the Board ratified the removal of plaintiff from the assembly.

**C. "Express Policy" and "Custom" Prongs of Monell**

We do not agree with the Board that we "foreclosed" plaintiff from pursuing a Monell claim under the "express policy" or "custom" prongs. What we said in our April 27, 2007 memorandum opinion was that only the policymaking prong *appears relevant*. 2007 WL 1308523, at *9. Plaintiff was free to argue the other Monell theories with respect to the instant motion, and we will consider those arguments.

Under the "express policy" prong of Monell liability, plaintiff must establish that the Board has an express policy that, when enforced, causes a constitutional deprivation. In a brief and halfhearted footnote, plaintiff contends that the express policy consists of the guidelines that the Board implemented in late 2002 for operating its meetings. Plaintiff fails to address, however,

how the guidelines for the governance of Board meetings caused his removal from the assembly, which is the only alleged deprivation of his rights at issue. "There must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" <u>Lanigan v. Village of E. Hazel Crest</u>, 110 F.3d 467, 479 (7th Cir. 1997) (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989)). The school assembly was not a Board meeting and thus was not governed by the guidelines. Because there is no evidence that the guidelines caused the alleged deprivation, plaintiff's "express policy" argument is rejected.

To establish "custom" liability under <u>Monell</u>, plaintiff must demonstrate that the Board has a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled that it constitutes custom or usage with the force of law. Plaintiff contends that the Board had a custom of "retaliating against critics of its policies" that resulted in his removal from the assembly. (Pl.'s Mem. in Opp'n at 8.)

In his Local Rule 56.1 statement, plaintiff sets forth eighteen "facts" in support of this argument. The Board moves to strike Statements 1, 4, 6, 8, 9, 10, 12, 13, 14, 16, 17, and 18. Statement 18 concerns whether we foreclosed plaintiff from pursuing the "express policy" and custom" prongs of <u>Monell</u> and is more of a legal argument than a statement of fact. Nonetheless, we have already decided that plaintiff is not foreclosed from arguing that

these theories apply, so we decline to strike Statement 18. The Board submits that we should strike the remaining statements for various reasons: they are speculative, unsupported or improperly supported, hearsay-based, and/or consist of improper legal conclusions.

"The purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner: it is not intended as a forum for factual or legal argument." Malec v. Sanford, 191 F.R.D. 581, 585 (N.D. Ill. 2000). We need not discuss each of plaintiff's statements individually, but we agree with the Board that Statements 1, 4, 6, 8, 9, 10, 12, 13, 14, 16, and 17 are improper statements of fact. Moreover, we find that Statement 2 and Statement 7 consist of improper argument and opinion and that Statement 7 is unsupported by the evidence cited by plaintiff. Those statements will also be stricken. We are left with Statements 3, 5, 11, and 15. Statements 11 and 15 concern events that occurred after the April 7 incident, so those facts are not evidence of any custom that existed prior to plaintiff's removal from the assembly.

The remaining statements, 3 and 5, do not constitute evidence that there was a custom of retaliating against plaintiff, let alone that there was any custom "so pervasive that acquiescence on the part of [the Board] was apparent and amounted to a policy decision." See Phelan v. Cook County, 463 F.3d 773, 790 (7th Cir.

2006). In Statement 3, plaintiff states that the Board "failed to discipline one of its employees who tried to physically attack Plaintiff as he was speaking on a public matter at a Board meeting in December 2002." (Pl.'s R. 56.1 Statement, ¶ 3.) Plaintiff cites only to his own affidavit. Both the statement and the affidavit are vague, and plaintiff fails to describe the alleged "attack" in any detail. He also fails to set forth any facts demonstrating that the Board was even aware of the "attack." In Statement 5, plaintiff states that in January 2003, the Board refused to allow him to distribute leaflets expressing his views but had admittedly previously allowed another citizen to do so. The two incidents described in Statements 3 and 5 do not amount to evidence of retaliation against plaintiff, nor of the requisite "widespread" practice amounting to a policy. See Phelan, 463 F.3d at 790.

Plaintiff has failed to raise a genuine issue as to whether the Board had an express policy or a custom that caused him to be removed from the assembly.

## **CONCLUSION**

For the reasons explained above, the motion of defendant Board of Education of Rich Township High School District 227 for summary judgment is granted. The Board's motion to deem facts admitted is denied. The Board's motion to strike portions of plaintiff's Local Rule 56.1 statement is granted in part and denied in part.

DATE:     June 23, 2008

ENTER:    _____
          John F. Grady, United States District Judge